699 So.2d 395 (1997)
Vera L. BATISTE, Plaintiff-Appellant,
v.
CAPITOL HOME HEALTH, Defendant-Appellant.
No. 96-799.
Court of Appeal of Louisiana, Third Circuit.
May 7, 1997.
Order Granting Rehearing In Part September 25, 1997.
*396 George Arthur Flournoy, Alexandria, for Vera L. Batiste.
Denis Paul Juge, Metairie, Mayra I. Leyva, New Orleans, for Capitol Home Health.
Before THIBODEAUX, SAUNDERS, DECUIR, PETERS and AMY, JJ.
SAUNDERS, Judge.
In this workers' compensation case, defendant appeals its having been ordered to provide disability benefits, medical expenses and rehabilitation services. Additionally, it appeals adverse awards of attorney fees and penalties on what it claims to have been close legal issues. Claimant also appeals, seeking an increase in the amount of her penalty and wage determinations and additional attorney fees.
We amend the award of compensation benefits to factor in claimant's fringe benefits, amend the award of penalties to $2,000.00, award an additional $2,000.00 in attorney fees for claimant's prosecution and defense of these proceedings, and render.

FACTS
Claimant, Vera Batiste, was injured in a job-related accident on November 27, 1993, while employed by defendant, Capitol Home Health, as a nurse's aide. Following the *397 accident, she was paid weekly disability benefits of $114.76, a figure based on an average weekly wage of $172.15. Going into trial, the questions were whether the employer adequately honored its statutory obligations to pay claimant two-thirds (2/3) of her pre-accident wages and provide her with medical benefits and meaningful vocational rehabilitation. Trial was conducted on October 19, 1995. On December 5, 1995, the hearing officer ordered defendant to pay disability benefits of $117.68, all medical bills due and owing, attorney fees of $7,500.00 and statutory penalties of $1,550.00. In addition, the hearing officer ordered defendant to provide claimant rehabilitation through a rehabilitation specialist recommended by claimant.

EMPLOYER'S APPEAL

Medical Benefits
Initially, the employer takes issue with the hearing officer's assessment of penalties and attorney's fees on the basis of its failure to pay medical expenses within sixty (60) days of its having received written notice. Setting forth specific instances in which bills were paid within 60 days, it maintains that this ruling, which formed the basis for its assessment of penalties and attorney fees, was manifestly erroneous. The premise of the employer's argument is La.R.S. 23:1201(E), which states:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
(Emphasis ours).
The employer contends that claimant's medical benefits were paid within sixty (60) days and therefore she is entitled to no penalties.
Rather than refute the specific factual allegations contained in defendant's argument, claimant observes that the foregoing language did not become effective until June 29, 1995, by virtue of Act 1137, prior to which medical benefits were required to be paid within 14 days of notice, pursuant to La.R.S. 23:1201(E), Acts 1992, No. 1003, § 1, effective January 1, 1993, long before claimant's accident occurred on November 27, 1993. Defendant's reply is that the 1995 amendments extending to sixty days the permissible delays should be applied retroactively to this 1993 accident because, according to defendant, the 1995 amendments are procedural in nature.
As might readily be observed, La.R.S. 23:1201(F), effective in 1995, clearly affords an employer 60 days to pay its employee's medical expenses. Therefore, the dispositive question is whether the 1995 amendment may be applied retroactively.
In determining whether laws may be applied retroactively, LSA-C.C. Art. 6 provides:
"In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."
Elaborating on LSA-C.C. Art. 6 in Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La. 1992), the Louisiana Supreme Court explained:
"LSA-C.C. Art. 6 requires that we engage in a two-fold inquiry. First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive."
Furthermore, even where the legislature expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381 (La.1978).
In Act 431 of 1992, we do not find that the legislature expressed its intent regarding retroactive or prospective application of its amendment to LSA-R.S. 23:1231. Accordingly, our next inquiry is whether the enactment is substantive, procedural, or interpretive.
Substantive laws establish new rules, rights, and duties or change existing ones. *398 St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992). Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985). Interpretive laws merely establish the meaning the interpreted statute had from the time of its enactment. St. Paul Fire & Marine, supra at 817.
When we examine Act 431 of 1992, we do not find that it changed the underlying two year period of death or established a new cause of action available to the worker's dependents. Accordingly, we do not find that the act was substantive. Likewise, we do not find the act interpretive since it did not determine the meaning of existing laws. However, we do find that Act 431 is procedural because it provides that the time from which the two year period would begin to run was affectively suspended as long as the injured worker was being treated for his work-related accident. In accord, Doyle v. St. Patrick Hosp., 499 So.2d 704 (La.App. 3rd Cir. 1986), writ. denied, 503 So.2d 478 (La. 1987).
It is well settled that procedural laws are given retroactive effect in the absence of language showing a contrary intention. Lott v. Haley, 370 So.2d 521 (La.1979). This jurisprudential rule is subject to the exception where the procedural law's application would operate unconstitutionally to disturb vested rights. Id.

Estate of Williams v. Louisiana Ofc. of Risk Mgt., 93-795 (La.App. 3 Cir. 3/2/94), 634 So.2d 1260, 1264, writ denied, 94-0793 (La.5/6/94), 637 So.2d 1054.
We conclude that claimant's rights to have her medical bills timely paid within fourteen days rather than sixty constituted a vested constitutional right and therefore hold that the hearing officer properly declined to apply the 1995 amendment to her 1993 accident.

Penalties for Overdue Medical Benefits
Alternatively, the employer suggests that penalties cannot be awarded for its failure to provide medical benefits, but only for its failure to pay wage benefits. This argument ignores changes in the law that long have been on the books. Were claimant's accident to have occurred before January 1, 1993, this argument would be supported by the opinion of a divided panel of this circuit in Dubois v. Diamond M Company, 559 So.2d 777 (La.App. 3 Cir.), writ denied, 563 So.2d 866 (La.1990), but countered by this court's holdings in Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3 Cir.1985), and other cases relying on Chelette, including Duhon v. Acadiana Transmissions, 517 So.2d 946 (La. App. 3 Cir.1987); LaHaye v. Westmoreland Casualty Co., 509 So.2d 748 (La.App. 3 Cir. 1987); and Theriot v. American Employees Insurance Co., 482 So.2d 648 (La.App. 3 Cir.1986).
However, effective January 1, 1993, there has been no question as to the law. As we observed in Mitchell v. Dixie Roofing & Sheet Metal Co., Inc., 95-288 at p. 8 (La.App. 3 Cir. 10/4/95), 663 So.2d 222, 227:
La.R.S. 23:1201 was amended by Acts 1992, No. 1003, effective January 1, 1993 to provide for a penalty on any unpaid medical benefits. Previously the statute had provided only for a penalty on an unpaid installment of compensation.
Therefore, we find no merit to defendant's alternate theory.

Vocational Rehabilitation
Next, we address whether the hearing officer erred in ordering defendant to pay the vocational rehabilitation consultant recommended by claimant rather than simply ordering defendant to select one, given defendant's failure to appoint a reliable one in the first place.
La.R.S. 23:1226 provides in pertinent part:
1226. Rehabilitation of injured employees
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
B. (1) The goal of rehabilitation services is to return a disabled worker to *399 work, with a minimum of retraining, as soon as possible after an injury occurs....
....
(3) The employer shall be responsible for the selection of a vocational counselor to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, the employee may file a claim with the office to review the need for such services in the same manner and subject to the same procedures as established for dispute resolution of claims for worker's compensation benefits.

C. (1) Rehabilitation services required for disabled workers may be initiated by:
(a) An insurer or self-insured employer by designating a rehabilitation provider and notifying the office.
(b) The office by requiring the insurer or self-insured employer to designate a rehabilitation provider.
(c) The employee, through a request to the office. The office shall then require the insurer to designate a rehabilitation provider.
(2) Rehabilitation services provided under this Part must be delivered through a rehabilitation counselor approved by the office.
(Emphasis added.)
Throughout the course of this litigation, claimant has contended that the vocational rehabilitation offered by her employer has been nothing but a sham, particularly in view of the uncontested facts that the consultant hired by the defendant met with her on only one occasion and merely offered Ms. Batiste, in her words, a "laundry list of jobs for her to embark on a wild goose chase, which she did."[1]
After observing that defendant offered no evidence to suggest that any meaningful rehabilitation was offered claimant, the hearing officer concluded that "[d]efendant has failed to provide prompt, true rehabilitation as required by law" and ordered defendant to cover the expense of vocational rehabilitation through Dr. John Grimes as requested by claimant on September 12, 1995.
On appeal, defendant objects to this ruling on essentially two grounds. First, it maintains that it did offer rehabilitation services as required by Louisiana law. Initially, we observe that meaningful rehabilitation is not accomplished by merely furnishing of a list of possible jobs. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733; Hickman v. Allstate Timber Co., 94-1275 (La.App. 3 Cir. 4/5/95), 653 So.2d 154, writ denied, 95-1133 (La.6/23/95), 656 So.2d 1017; Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3 Cir.1993). Clearly, the employer is compelled to perform a meaningful inventory of a claimant's job skills and experience. See Maxie v. Brown Industries, Inc., 95-19 (La.App. 3 Cir. 5/31/95), 657 So.2d 443, writ denied, 95-1630 (La.10/6/95), 661 So.2d 469. In this case, the record discloses a laundry list of jobs and no credible skills inventory. Thus, we find no manifest error in the hearing officer's determination that the employer failed to afford its injured employee "prompt, true rehabilitation as required by law."
We likewise find no legal support for defendant's argument that only an employer is empowered to select a vocational rehabilitation counselor to aid its injured employee, particularly in circumstances demonstrating an employer's bad faith, unwillingness or inability to provide prompt or meaningful rehabilitation.
Citing Romero v. Grey Wolf Drilling Company, 594 So.2d 1008 (La.App. 3 Cir.1992) and La.R.S. 23:1226(B)(3), the employer argues that there is nothing in the Louisiana Workers' Compensation Act that permits the injured worker to choose her own rehabilitation specialist. Rather than share the employer's view that the language contained in La.R.S. 23:1226(B)(3) anoints the employer with the sole and exclusive right to appoint a vocational rehabilitation consultant, reading the various sections of La.R.S. 23:1226 as a consistent whole, we interpret the provision differently, as one which principally entitles an injured worker to prompt and meaningful rehabilitation. While it is true that La.R.S. *400 23:1226(B)(3) imposes upon the employer the principal responsibility for ensuring its injured worker's right to meaningful rehabilitation, nowhere does the law purport to deny the injured worker's right to redress where an employer ignores this responsibility; and while it is true that nothing in La.R.S. 23:1226 explicitly authorizes the retention of a rehabilitation consultant paid by the employer that is recommended by its employee, there is nothing in the law to prohibit the hearing officer or court of appeal from doing so where the employer fails to do so in the first place. To the contrary, "[a] hearing officer shall have the power to enforce any order or judgment he shall deem proper which is issued pursuant to the powers and jurisdiction provided for in this Chapter and the Constitution of Louisiana," La.R.S. 23:1310.7,[2] and to apply the statute as defendant proposes would require that we ignore the clear language of La.R.S. 23:1226, which provides that where the employer refuses to provide rehabilitation services, the employee is permitted to file a WC 1008 claim to review the need for such services in the same manner and subject to the same procedures as established for dispute resolution of claims for workers' compensation benefits.[3]
Contrary to the employer's assertion, Romero, 594 So.2d 1008, does not mandate a contrary conclusion. In Romero, there was nothing to suggest that an employer or insurer acted in bad faith or that the rehabilitation firm was biased; therefore, we affirmed the determination of the fact finder, finding no abuse of discretion in its finding that claimant lacked grounds for refusing the rehabilitation which was offered in accordance with the law. The facts of this case stand in stark contrast to those of Romero as, unlike Romero, the employer here abdicated its statutory responsibility to retain a vocational consultant to assist its injured employee, and the employee did not usurp the employer's first right to select one in good faith.[4]
Therefore, we hold that neither La.R.S. 23:1226 nor Romero, 594 So.2d 1008, stands for the blanket proposition that a claimant has no right to rehabilitation where the employer or insurer fails to honor its legal obligation to name a firm to rehabilitate its employee in good faith, or where an employer or its insurer abdicates its obligation to provide its injured worker with prompt rehabilitation.
We further hold that an employer or insurer who falls short of its minimum statutory requirement to provide meaningful rehabilitation waives its opportunity to protest its financial responsibility for the same, whether retained by the hearing officer or the claimant.[5] As we have repeatedly stated, where employed, sham rehabilitation will not be tolerated. Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/97), 690 So.2d 792; City of Crowley v. Comeaux, 93-1116, p. 5 (La.App. 3 Cir. 4/6/94); 638 So.2d 658, 661, n. 2, writ denied, 94-1184 (La.6/24/94), 640 So.2d 1355; Maxie v. Brown Industries, Inc., 95-19, 657 So.2d 443; Hopes v. Domtar Industries, 627 So.2d 676, and cites therein.
Reverting to the present case, given our conclusion that the hearing officer was not clearly wrong in concluding that defendant's rehabilitation efforts failed to comply with La.R.S. 23:1226, we decline to upset its decision to appoint rehabilitational consultant, Dr. Grimes, solely on the basis of claimant's having recommended him.

Attorney Fees
Finally, the employer assigns as error the hearing officer's assessment of attorney fees.
*401 As the employer observes, to be held liable for attorney fees under La.R.S. 23:1201, the claimant must prove by a preponderance of the evidence that the employer's conduct was arbitrary, capricious and without probable cause. King v. Travelers Insurance Company, 553 So.2d 1072 (La. App. 3 Cir.1989), writ denied, 558 So.2d 570 (La.1990).
Initially, the employer contends that the hearing officer did not explicitly find it arbitrary in failing to honor its other statutory obligations, and therefore it should not be held liable for attorney fees regardless of the correctness of the hearing officer's other rulings. Claimant disagrees with this factual assertion, quoting the following portion of the hearing officer's reasons:
For its arbitrary failure to pay the correct amount of indemnity benefits, its late institution of indemnity benefits, its failure to pay medical benefits owed, and for its failure to provide prompt, true rehabilitation, reasonable attorney's fees are warranted in the amount of $7,500.00.
Given the strength of this language and the underlying facts of this case, we agree with claimant: the hearing officer clearly did find the employer arbitrary and capricious.
Alternatively, the employer maintains that it should not be held liable for attorney fees because it paid benefits before claimant retained counsel, irrespective of whether it was its initial actions that compelled claimant to do so. We disagree. First, as a narrow proposition, we are not in a position to so restrict our field of vision as to second-guess the finding of the hearing officer that it was the employer's prior inexcusable actions which compelled claimant to retain counsel, nor that the employer's actions were less than arbitrary and capricious. Second, in the broader perspective, we are not inclined to discourage the retention of counsel by an injured, vulnerable employee who is faced with the prospect of an adversary possessing far superior experience and resources; after all, it is precisely to eliminate such bilateral inequalities of bargaining strength that our society has erected its pillars of law, including those providing attorney fees in workers' compensation cases, in the first place.

CLAIMANT'S APPEAL

Penalties
Ms. Batiste also appeals certain aspects of the hearing officer's award. Initially, she maintains that the hearing officer erred in only awarding her penalties of $1,550.00 instead of the full $2,000.00. Citing La.R.S. 23:1201(E) as set forth in Acts 1992, No. 1003, § 1, she reiterates that her medical benefits had not been paid within 14 days of notice by her in October 1994 and by her attorney on December 16, 1994, and, in fact, did not pay certain of her medical expenses until after June 20, 1995, much more than 40 days after notice. Because the cited authority required her medical benefits to be paid within 14 days and did not require written demand, she argues that the hearing officer clearly erred in failing to award the full $2,000.00 penalty. We agree and amend her award for penalties to $2,000.00.

Fringe Benefits
Next, claimant assigns as error the hearing officer's refusal to factor her fringe benefits into her wage rate in deriving the amount of compensation benefits to which she was entitled. As claimant notes, the hearing officer concluded that "[t]his argument is not accepted as law." We reverse this conclusion, as fringe benefits generally should be factored into an injured worker's wages. As we observed in Cook v. Dewey Rusk Flooring, 93-1643, at p. 8 (La.App. 3 Cir. 8/10/94), 642 So.2d 234, 240:
Cook is correct that, as a general rule, fringe benefits paid an employee would be included in the calculation of wages earned at the time of the injury. As stated by Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989):
"In determining the amount of pre-injury wages an employee earned, `[a]ny money paid the employee which can be regarded as remuneration or reward for his services should be included in fixing his compensation, irrespective of whether or not the payment was in the form of *402 wages.' Malone and Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation Sec. 324 at 93 (1980)."

Id., at pp. 1007-08; see also Hodges v. Sentry Ins. Co., 492 So.2d 193 (La.App. 3d Cir.1986); Vaughan v. Insurance Company of North America, 482 So.2d 1014 (La. App. 3d Cir.1986).
Indeed, there is nothing novel about factoring into the workers' compensation wage computation an employee's fringe benefits that cease after a worker is felled by injury. See, e.g., Morgan v. Equitable General Ins. Co., 383 So.2d 1067 (La.App. 3 Cir.1980)(value of meals); Ardoin v. Southern Farm Bureau Casualty Ins. Co., 134 So.2d 323 (La. App. 3 Cir.1961)(free residence and milk); Richmond v. Weiss & Goldring, Inc., 124 So.2d 601 (La.App. 3 Cir.1960)(regular bonuses); Fontenot v. Myers, 93 So.2d 245 (La.App. 1 Cir.1957)(free residence)(St. Landry Parish case predating 1960 founding of present Third Circuit).[6]
Accordingly, we reverse that portion of the hearing officer's ruling which declined to incorporate within claimant's wage figures her proven employer-provided life insurance benefits ($4.80/month), medical insurance ($157.84/month) and retirement (5% of gross wages, divided by number of weeks worked, for a total of $10.81, according to claimant without contradiction).

Mileage Reimbursements
Third, claimant maintains that because her mileage reimbursements exceeded the operating costs of her economy car, the excess likewise should be factored into her wage basis. Again, we find Cook, 93-1643, 642 So.2d 234, dispositive, only this time in support of a finding adverse to claimant.
An exception to this rule [incorporating the value of fringe benefits when determining an injured worker's wage benefits] applies in cases of reimbursement for travel expenses. This principle was set forth in Malone and Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation Sec. 324 at 95 (1980) as follows:
"The only deviation from these rules appears to be in the case of reimbursement to employees for expenses incurred due to travel. It has apparently been felt that such allowances amount only to a reimbursement for extra living costs made necessary by the job, and are not real and reasonably definite economic gains to the employee. This position was first taken in Louisiana in Barrilleaux v. Hartford Accident and Ins. Co. [Indemnity], [12 So.2d 611, (La.App. 1 Cir.1943)] and affirmed in a later case.
There are not very many decisions in Louisiana on the point. Other jurisdictions tend to share Louisiana's view in this regard, though some will compare the allowance to the actual travel expenses and include as a wage any amount which constitutes actual gain to the employee."
Cook, 642 So.2d at 240 (notes omitted).
In this case, the record shows that claimant was paid $.24 per mile in mileage reimbursements. After considering all of the evidence, including that presented by claimant to show that her actual auto expenses were less than her mileage reimbursements, the hearing officer ruled in favor of claimant. We decline to upset its finding of fact that claimant's mileage allotments did not compensate her personally but rather constituted what they purported to be, reasonable business expense reimbursements for the use of her automobile.

Additional Attorney Fees
Finally, claimant seeks an additional $2,000.00 in attorney fees for time spent defending her employer's appeal. We have reviewed claimant's briefs and agree that an *403 additional $2,000.00 in attorney fees is warranted under the circumstances.

DECREE
The judgment of the hearing officer is affirmed in part and reversed in part as to the wage computation and penalty assessment, and rendered. Claimant is entitled to penalties of $2,000.00; to have her fringe benefits factored into her wage benefits as provided above; and claimant is awarded an additional $2,000.00 for legal services rendered in connection with this appeal.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
DECUIR and AMY, JJ., dissent.

ON REHEARING
SAUNDERS, Judge.
Both parties seek a rehearing with respect to certain aspects of our initial judgment.
Defendant reiterates its arguments that it had 60 days rather than 14 days in which to pay claimant's medical benefits, that the hearing officer was not authorized to order rehabilitation through claimant's preferred counselor, and that we erred in recognizing claimant's fringe benefits in calculating her lost wages.
Claimant contends that we overlooked her prayer for a full $2,000.00 in penalties for defendant's failure to timely pay her medical benefits, in addition to the $2,000.00 she has already been awarded for defendant's failure to timely pay her lost wage benefits.
After reviewing the briefs of the parties, we deny defendant's application for rehearing on the basis of our original opinion. We do, however, find support for claimant's application for rehearing.
On original hearing, it might appear as though we overlooked claimant's supplemental and amending brief, by which she took pains to seek two separate awards of $2,000.00 for defendant's failure to timely pay wage benefits and an additional $2,000.00 for its failure to timely pay medical benefits, relief she is clearly entitled to, consistent with our recent holdings in LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir.1997), 699 So.2d 95, and Kendrick v. Bill Liberto Enterprises, 96-979 (La.App. 3 Cir. 6/18/97), 698 So.2d 22.
Accordingly, we amend our original decree to confirm it with our intentions to render an award entitling claimant to $2,000.00 for each component.
REHEARING GRANTED IN PART AND DENIED IN PART.
DECUIR and AMY, JJ., dissent.
NOTES
[1] Since then, the vocational consultant has had no contact with claimant.
[2] And, as for this court, we are empowered to render any judgment which is just, legal and proper under the record on appeal. La.Code Civ.P. art. 2164.
[3] As noted by our emphasis, La.R.S. 23:1226(C), also cited by defendant, merely provides the means by which an employer might initiate rehabilitation services.
[4] The legislature's delegation to the employer of the responsibility to select a vocational rehabilitation expert would appear to be related more to real world practicalities than to any other cause as, between the worker and his employer or its insurer, the latter are more likely to have the expertise required to make a credible referral, assuming they act promptly and in good faith.
[5] This rule presumes, of course, that the rehabilitation expenses are justifiable.
[6] Defendant maintains that in order to be factored into the wage basis, fringe benefits must be "fairly contemplated by the parties as they entered the contract of employment," and cites the case of Vaughan v. Ins. Co. Of North America, 482 So.2d 1014 (La.App. 3 Cir.1986) in support of this contention. While we do not quarrel with defendant's recitation of the law, in the typical situation involving the arms-length relations of an employer and employee, it is difficult to conceive of a situation where such benefits are not "fairly contemplated."