847 So.2d 766 (2003)
John C. SHAMBURGER
v.
RIBBECK CONSTRUCTION COMPANY.
No. 02-1488.
Court of Appeal of Louisiana, Third Circuit.
June 4, 2003.
*767 Scott J. Pias, Attorney at Law, Lake Charles, LA, for Plaintiff/Appellant, John C. Shamburger.
Mark A. Ackal, Lafayette, LA, for Defendant/Appellee, Ribbeck Construction Corporation.
Court composed of SYLVIA R. COOKS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
COOKS, Judge.
The plaintiff appeals the judgment of the Office of Workers' Compensation finding that he did not meet his burden of proving he suffered injury arising out of a *768 work-related accident. For the following reasons, we affirm.

FACTS
In this workers' compensation case, the plaintiff, John C. Shamburger, alleges injury arising from his employment with Ribbeck Construction Corporation. Shamburger was a carpenter hired by Ribbeck to work on a project it had at the Welsh High School. On August 21, 2001, he arrived at work and began installing kick plates on numerous doors at the school. He asserted about four or five hours into his shift that evening, he stood up from where he was working and walked over to his supervisor, Brent Doucet, to inquire as to his next work duty. Shamburger was talking with Doucet when he had a sudden attack and was knocked to his knees by intense back, leg and groin pain. Ultimately, it was determined that Shamburger suffered from a "blown disk."
Shamburger eventually filed a workers' compensation claim, which the employer opposed on the grounds no accident occurred while he was in the course and scope of his employment. The workers' compensation judge (WCJ) held this was an unwitnessed accident and found there was evidence which discredited or cast serious doubt upon Shamburger's version of the incident. The WCJ gave the following oral reasons for discounting his story:
After Mr. Shamburger and Mr. Doucet discussed where the next kick plates would be installed, the claimant put his hands on his knees, went to the floor, and when asked if he was okay, he responded, "It's happened before," he would be okay. He requested medication from his lunch box, took his medication, and after a while he left the job site.
On the date of the alleged incident, the claimant was under the care of a doctor and was, in fact, taking medication. Mr. Shamburger's testimony is simply not corroborated by circumstances immediately following the alleged incident.
For these reasons, the Court finds that the plaintiff has failed to carry his burden of proof; therefore, he is not entitled to workers' compensation benefits.
Plaintiff appealed the WCJ's judgment contending it was error to hold that this was an unwitnessed accident and benefits, penalties and attorney fees should have been awarded.

ANALYSIS
To establish entitlement to workers' compensation benefits, a claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment; the accident caused his injuries; and the injury caused his disability. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La. 1979); Ceasar v. Crispy Cajun Restaurant, 94-30 (La.App. 3 Cir. 10/5/94), 643 So.2d 471, writ denied, 94-2736 (La.1/16/95), 648 So.2d 931.
In determining whether or not a claimant has discharged his burden of proof, the trier of fact should accept as true a witness' uncontradicted testimony, even though the witness is a party, absent circumstances casting suspicion upon the reliability of that testimony. Watkins v. Asphalt Assocs., Inc., 96-249 (La.App. 3 Cir. 12/4/96), 685 So.2d 393. The worker's testimony standing alone may be sufficient to discharge this burden of proof, provided that two elements are satisfied: (1) no other evidence discredits or casts serious doubt on the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert *769 Int'l Inc., 593 So.2d 357 (La.1992); Dore v. Sydran Food Services II, L.P., 01-728 (La.App. 3 Cir. 10/31/01), 799 So.2d 825. Louisiana courts have interpreted the work-related accident requirement liberally, but the liberal construction of the statute does not relax the worker's burden of proof. Id.
Workers' compensation judges' findings are subject to the same standard of review as those of a district court judge. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706. Whether claimant met his burden of proof is a factual determination not to be disturbed on review unless clearly wrong or manifestly erroneous. Bruno, 593 So.2d 357. The issue before us is whether the testimony and evidence contained in the record establishes a reasonable factual basis for the WCJ's findings and that the findings were not clearly wrong/manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987).
Shamburger argues the testimony of Blaine Doucet and Billy Stark establishes this was not an unwitnessed accident and that he was entitled to workers' compensation benefits. Doucet gave the following testimony regarding the incident in question:
A. On that night, Mr. Shamburger had the position of installing some kick plates on some doors. We had a little staging area in the hallway where we had the blueprints and materials. I was working in the immediate area so Mr. Shamburger approached and asked where we were going to work at next, what area we'll be working in next. So we discussed it very briefly a couple of minutes.
During that time Mr. Shamburger just kind of reached down with both hands, kind of on his knees and looked very distressed. He didn't have a tool belt on. We were standing there.
Q. You were just standing face to face with him?
A. Face to face. So we had a little staging area there where we talked about the plans, and he immediately put his hands on his knees. And I said, "John, are you okay?" He said, "Yeah, it's my back. It's okay." And it looked like he was getting progressively worse, so he kind of went down to all knees. He was on all fours.
The other carpenter, Billy Stark, was in the area, so me and Billy were right there and provided attention to him. And we both consoled him and said, "Can we do anything? Are you okay? Did you get hurt? What happened here?" And he said, "No, its going to be okay. It has happened before. I need you to go get my medicine out of my lunch box." At about that time he saidBilly went to retrieve the medicine.
Q. Did you ask him during this event, did you say, John, did something happen? Did you do something to hurt yourself?
A. Yeah, you have to ask him what happened.
Q. And what did he say?
A. "It's a previous ailment. I know how to deal with it. I will be okay." Evidently, he had medicine for it.
Billy Stark also was employed by Ribbeck for the job at Welsh High School. Stark testified he did not see Shamburger fall to the ground, but at one point did see him down on one knee. After he fell to his knees, Shamburger asked Stark to retrieve medication from Shamburger's lunch box and give it to him. Stark testified that Shamburger complained of leg and back pain on numerous occasions prior to the incident. Stark also stated from the first day he saw him, Shamburger appeared to be in pain.
*770 La.R.S. 23:1021(1) requires that an accident involve an actual, identifiable, precipitous event which directly produces symptoms at the time of the injury which is "more than a gradual deterioration or progressive deterioration." There is no testimony in the record which identified a work-related "precipitous event" which caused the alleged injury. The only specific "events" Shamburger mentioned in his testimony were the general installing of kick plates throughout the day and a "little problem" that occurred in the storeroom "moving things." Shamburger was not engaged in either of these activities when he fell to his knees in front of Brent Doucet. Based on the record, we find the WCJ did not err in finding Shamburger failed to discharge his burden of proving any "unexpected, or unforseen actual, identifiable, precipitous event happening suddenly or violently."
We also find the evidence supports the WCJ's finding that Shamburger failed to sustain his burden of proving that a compensable accident occurred. Shamburger testified he experienced pain at his previous job before working for Ribbeck. He admitted he had been "fighting the pain for four or five months" before the incident in question. Shamburger had been working for Ribbeck approximately three weeks before August 21, 2001. Approximately two weeks before the incident, Shamburger saw his family doctor complaining of pain in his left hip that extended down his left leg. He stated this pain began before he went to work for Ribbeck. According to Shamburger, his leg and back problems would sometimes flare up even in periods of inactivity. He began receiving treatment and taking medication for his leg and back problems before he accepted employment with Ribbeck. Shamburger testified the morning of August 21, 2001, he visited Dr. David Dobbins, and was given a cortisone shot in his left hip.
The medical records revealed complaints of lower back pain beginning as early as 1980. In 1988, Dr. Dobbins treated Shamburger for lower back pain which traveled into his left buttock and down his left leg. Shamburger was diagnosed by Dr. Dobbins as having lumbar strain with sciatica. He was referred to Dr. Nathan Cohen, an orthopedic surgeon, who he saw in June of 1988. Shamburger testified he has had back pain "off and on all of my life." He stated this did include lower back pain. Shamburger also admitted in the months before he was employed by Ribbeck, he had suffered from "back pain in both sides of [his] low back."
If the evidence establishes only the possibility that a work event produced the disability or leaves the question open to speculation, then the claimant fails to meet the burden of proof. Matthews v. Ron Williams Const., XXXX-XXXX (La.App. 3 Cir. 2/6/02), 815 So.2d 933; Cook v. Dewey Rusk Flooring, 93-1643 (La.App. 3 Cir. 8/10/94), 642 So.2d 234, writ denied, 94-2804 (La.1/13/95), 648 So.2d 1343. The WCJ noted that on the date of the alleged accident, Shamburger was under the care of a physician and taking medication. Therefore, she concluded his problems did not result from a job accident, but were a continuation of longstanding problems. We find no manifest error in this conclusion.

DECREE
For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.