# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1566


**DANUTA LACAZE**

**VERSUS**

**ALLIANCE COMPRESSORS**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NOS. 01-03278 & 01-03279
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE


**\*\*\*\*\*\*\*\*\*\***


## ELIZABETH A. PICKETT
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.


**AFFIRMED AND RENDERED.**


**George Arthur Flournoy**
**Flournoy, Doggett & Losavio**
**P. O. Box 1270**
**Alexandria, LA  71309-1270**
**(318) 487-9858**
**Counsel for Plaintiff/Appellee:**
      **Danuta Lacaze**

**Mark Alan Watson**
**Stafford, Stewart & Potter**
**P. O. Box 1711**
**Alexandria, LA  71309**
**(318) 487-4910**
**Counsel for Defendant/Appellant:**
      **Alliance Compressors**

**PICKETT**, Judge.

## FACTS

Danuta Lacaze was employed by Alliance Compressors, Inc. (Alliance) as a machinist in Natchitoches, Louisiana. As a machinist, she was required to lift objects weighing forty to sixty pounds. On November 11, 2000, she was involved in an on-the-job accident which resulted in an injury to her right shoulder and right upper arm. Alliance paid medical bills incurred by Ms. Lacaze as a result of this injury. The treating physician placed her on light duty, and she returned to work at Alliance at a light-duty position. On December 30, 2000, Lacaze was involved in another on-the-job accident whereby she fractured her right elbow in a fall. She was initially treated at the Natchitoches Parish Hospital Emergency Room. She was later treated by Dr. Terry Texada, an orthopedist, at St. Frances Cabrini Hospital in Alexandria, Louisiana. Dr. Texada did not release her to return to work. Lacaze received indemnity benefits for the period beginning December 31, 2000, at the rate of $213.33 per month. She took up a part-time job house sitting for an elderly lady. On May 8, 2001, Dr. Texada released Lacaze to return to light-duty work with a restriction that she not lift anything weighing more than five pounds with her right arm. In July, 2001, Dr. Texada approved a light-duty position with Alliance. On July 12, Alliance contacted claimant's counsel via letter, wherein it offered Lacaze a position that was allegedly within the physical requirements mandated by Dr. Texada, as an Oldham Coupling Operator. On July 13, Lacaze received a message on her answering machine from her attorney that she was to return to work at Alliance the following morning. On July 14, she reported to work at 6:00 a.m. but was called into a meeting. Present at this meeting were Mike Penrod, supervisor; Rusty Boller; the health and safety manager; Bobbie Nolley; Tricia Boller and Jeff Risinger, the human resource manager. After the meeting, Risinger suspended her for two weeks . He also

instructed the adjuster to terminate her benefits. Lacaze was absent the remainder of the month of July, but returned to work at Alliance on August 3rd, 4th and 5th. She also worked on August 10, 11, and 12. On August 17, 2001, Alliance terminated her employment for violation of their attendance policy because she had to stop and pick up medication on her way to work and was seven minutes late. Lacaze filed a Disputed Claim for Compensation with the Office of Workers' Compensation wherein she alleged as follows:

1) The average weekly wage was improperly calculated due to the employer's failure to include fringe benefits in its calculation;

2) The average weekly wage and, as a result, the temporary total disability benefits were incorrectly calculated;

3) The employer failed to produce medical records from the Natchitoches Parish Hospital timely;

4) Medical bills were not paid timely;

5) Claimant is entitled to weekly workers' compensation indemnity benefits after her termination;

6) The employer paid claimant temporary total disability benefits late; and

7) Claimant is entitled to penalties and attorney fees.

The matter was heard on March 18, 2003, and the workers' compensation judge (WCJ) issued an oral ruling on June 30, 2003. The WCJ ruled that it had no records to make a proper calculation of any fringe benefits from the 401K plan. The WCJ found that at the time of her work injury on December 30, 2000, Lacaze's average weekly wage was $381.20 and that she was entitled to a compensation rate of $254.13 per week. The WCJ denied Lacaze's claim for penalties and attorney fees pursuant to La.R.S. 23:1125 for the employer's alleged failure to provide her with medical records and denied penalties and attorney fees for the employer's alleged late payment of medical bills. The WCJ ruled that Lacaze was entitled to supplemental earnings

2

benefits (SEBs) from the date of her termination and continuing subject to a credit for wages that she earned in her various sitting jobs. The WCJ found that Alliance did not make a good faith effort to assist Lacaze in returning to work and that its failure to pay her any benefits was arbitrary and capricious after her discharge on August 17, 2001, but did not award a penalty. The WCJ found that Alliance paid temporary total disability benefits late and awarded a $900.00 penalty and $2,500.00 for attorney fees. The WCJ awarded $2,000.00 for penalties, and $4,000.00 in attorney fees for Alliance's failure to pay the correct compensation rate and failure to use the proper four full weeks of earnings before December 30, 2000. The WCJ awarded $5,000.00 for attorney fees for the reinstatement of benefits and ruled that Lacaze had a zero earning capacity. In accordance with this oral ruling, a judgment was rendered and signed on July 10, 2003.

It is from this ruling and judgment that the employer appeals.

## ASSIGNMENTS OF ERROR

The employer seeks review of four assignments of error:

1. The Workers' Compensation Judge erred in finding the employee to be entitled to Supplemental Earnings Benefits;

2. The Workers' Compensation Judge erred in finding the employee entitled to a wage earning capacity of zero ($0.00);

3. The Workers' Compensation Judge erred in finding the employee entitled to Supplemental Earnings Benefits from July 15, 2001; and

4. The Workers' Compensation Judge erred in awarding attorney fees relative to the discontinuance of indemnity benefits, and no attorney fees should be awarded for defending this appeal.

3

## DISCUSSION

*Standard of Review*

An appellate court may not set aside the factual findings of a workers' compensation judge in the absence of manifest error or unless it is clearly wrong. *Wackenhut Corr. Corp. v. Bradley*, 96-796 (La.App. 3 Cir. 12/26/96), 685 So.2d 661. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993).

*Supplemental Earnings Benefits*

Assignment of Error Number 1:

In it's first assignment of error, Alliance argues that the WCJ erred in finding that the claimant was entitled to supplemental earnings benefits. Alliance contends that the claimant failed to sustain her burden of proof that she was unable to earn ninety percent of her pre-accident wages as required under La.R.S. 23:1221(3).

The purpose of SEBs is to compensate an injured employee for the wage-earning capacity lost as a result of a work-related accident. *City of Jennings v. Dequeant*, 96-943 (La.App. 3 Cir. 11/5/97), 704 So.2d 264. Entitlement to SEBs is governed by La.R.S. 23:1221(3), which provides, in pertinent part, as follows:

> (3) **Supplemental earnings benefits**.
>
> (a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and

4

average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages" by fifty-two and then dividing the quotient by twelve.

An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. La.R.S. 23:1221(3)(a). "Initially, the injured employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his or her inability to earn that amount under the facts and circumstances of the individual case." *Freeman v. Poulan/Weed Eater*, 93-1530, p. 7 (La. 1/14/94), 630 So.2d 733, 739.

Once the employee's burden is met, the burden shifts to the employer. In order to defeat the employee's claim for SEBs or establish the employee's earning capacity, the employer must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job. In addition, the employer must prove that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i); *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005 (La.1989). Actual job placement is not required. *Romero v. Grey Wolf Drilling Co.*, 594 So.2d 1008 (La.App. 3 Cir. 1992).

An employer may discharge its burden of proving job availability by establishing: 1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region, 2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job, and 3) an actual position available for that particular

job at the time that the claimant received notification of the job's existence. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. A "suitable job" is a job that the claimant is not only physically capable of performing, but one that also falls within the limits of the claimant's age, experience, and education. *Id.*

Our first inquiry is whether the WCJ erred in finding that the claimant was entitled to SEBs following the accident on December 30, 2000.

In the instant case, the claimant was a full-time employee earning $8.00 per hour. The WCJ found that at the time of the accident in question, the claimant's average weekly wage was $381.20. Following the accident, Lacaze did not return to work at Alliance, per her doctor's instructions, but began house sitting for an elderly lady. She worked two days a week from 9 a.m. to 4 p.m. Although her treating physician released her to return to light-duty on May 8, 2001, the employer did not provide a position that met the restrictions placed upon her until July 12, 2001.

We, therefore, find that the claimant meet her burden of proof that she sustained a work-related injury that resulted in her inability to earn ninety percent or more of her average pre-injury wage as provided for in La.R.S. 23:1221(3)(a). We also find that the employer did not provide a suitable job that was within claimant's physical capabilities until July 12, 2001.

This assignment of error is without merit.

Assignment of Error Number 3:

In its third assignment of error, Alliance asserts that the WCJ erred in finding that the employee was entitled to SEBs from July 15, 2001. Specifically, Alliance asserts that the claimant failed to prove an entitlement to benefits because she was discharged after returning to work for reasons wholly unrelated to her job-related

injury and/or workers' compensation claim.

This assignment of error presents two issues: 1) whether the WCJ erred in awarding SEBs starting on July 15, 2001, when the claimant had returned to her employment earning wages at the same rate of her pre-injury wage but was subsequently suspended and 2) whether the WCJ erred in finding that the claimant was entitled to SEBs following her termination on August 17, 2001.

The case of *Palmer v. Schooner Petroleum Services*, 02-397 (La.App. 3 Cir. 12/27/02), 834 So.2d 642, *writ denied*, 03-0367 (La. 4/21/03), 841 So.2d 802, provides us guidance in the instant case. In *Palmer*, this court held that termination does not destroy ones entitlement to SEBs. In that case, the claimant suffered an on-the-job injury to his back. He remained with his employer in a light-duty position until he was terminated allegedly for substandard job performance. We noted:

> [I]t is a claimant's refusal to accept employment that fits within his abilities and/or disabilities which is made available to him that precludes an award of SEBs. In other words, "[t]he SEB statute does not permit a claimant to choose not to work and still collect SEB when he is physically able to work and jobs are available." *Blanchard v. Federal Express Corp.*, 95-0349, p. 4 (La.App. 1 Cir. 11/9/95); 665 So.2d 11, 13.

*Id.* at 650.

We further noted that, "[t]o hold that an employee's termination destroys an employee injured on the job's entitlement to SEB would provide incentive for employers to allow injured employees to return to work and thereafter terminate them to avoid paying SEB." *Id.*

In the instant case, Lacaze returned to Alliance on July 14, 2001, and was suspended for two weeks. Her benefits were also terminated on that date. After her suspension, she returned to Alliance in August 2001, where she worked as an Oldham Coupling Operator until her termination on August 17, 2001, for allegedly violating the company's attendance policy. After being discharged from Alliance, Lacaze

began working at the Arbor of Natchitoches in mid-August 2001. She was paid $5.25 per hour. She left that job in March 2002. From March, 2002 until January 2003, LaCaze worked as a house sitter. At this position, she worked five days a week, ten hours a day at a rate of $6.00 per hour. At the time of the hearing, she was house sitting for Betty Lacaze, working five days a week, ten hours a day at a rate of $6.00 per hour.

We find that Lacaze did not refuse to accept employment but rather was not permitted to work due to the suspension imposed upon her return to Alliance. Once her suspension ended, she returned to Alliance and performed her duties until she was terminated.

In accordance with the jurisprudence set forth in *Palmer*, we find that Lacaze was entitled to SEBs from July 15, 2001, during her suspension, until she returned to employment on August 3, 2001. We further find that Lacaze's entitlement to SEBs did not cease upon her termination. Lacaze was able to find employment as a house sitter earning $300.00 per week, giving her an estimated annual income as a house sitter of $15,600.00. Her estimated annual income at Alliance was $19,822.24, ninety percent of which is $17,840.16. Therefore, the record supports the WCJ's finding that Lacaze was entitled to SEBs from July 15, 2001, subject to a credit for the days in August that she worked at Alliance prior to her termination.

This assignment of error is without merit.

Assignment of Error Number 2:

Because we have decided that the claimant meet her burden of proof relative to her entitlement to benefits following termination, we must determine whether the WCJ erred in finding the employee entitled to a wage earning capacity of zero ($0.00).

The court's actual ruling ordered the "reinstitution (sic) of her benefits with a

8

zero earning capacity until the time periods that Ms. Lacaze had returned to work in her sitting jobs and SEB is to be computed upon those wages thereafter."

When the employee cannot work or earns less than she is able to earn because of a job-related disability, the employer must establish her earning capacity. *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52 (La.1993).

In the instant case, the claimant has established that she cannot earn wages equal to ninety percent or more of the wages that she earned prior to the accident and, as a result, is entitled to SEBs.

The record reflects that Alliance did not establish claimant's earning capacity. The claimant, however, testified that following her termination from Alliance she was employed as a house sitter. In that position, the record clearly shows that she worked five days a week, ten hours a day, at a rate of $6.00 per hour. That establishes a wage earning capacity of $300.00 per week. The WCJ found that at the time of the accident in question, the claimant's average weekly wage was $381.20 and that she returned to Alliance in July at that same weekly wage. We, therefore, find that the difference between the claimant's pre- and post-injury wages is $81.20, which entitles her to a weekly benefit of $54.13.

The WCJ found the claimant's earning capacity to be zero only until she returned to her sitting jobs. Thereafter, it was to be calculated according to her wage. We find no error in the court's ruling on this issue.

Assignment of Error Number 4:

In its fourth assignment of error, Alliance asserts that the WCJ erred in awarding attorney fees relative to the discontinuance of indemnity benefits and that no attorney fees should be awarded for defending this appeal.

Penalties and attorney fees do not automatically result from an employer's

erroneous failure to pay benefits. *See Miles v. F.D. Shay Contractor, Inc.*, 626 So.2d 74 (La.App. 3 Cir. 1993). The statutes authorize such penalties and attorney fees only where the employer is arbitrary and capricious in denying the claim. The provisions are penal in nature and must be strictly construed so that employers are not penalized for contesting a close factual question in a workers' compensation proceeding and relying on valid defenses. *Id.* The determination of whether an employee may be awarded penalties and attorney fees is a question of fact which we will not disturb on appeal absent a finding of manifest error. *Lyons v. Bechtel Corp.* , 00-0364 (La.App. 3 Cir. 12/27/00), 788 So.2d 34, *writ denied*, 01-0282 (La. 3/23/01), 787 So.2d 966.

We find no manifest error in the WCJ's decision to award penalties and attorney fees.

In her answer to the instant appeal, the claimant requests attorney fees for work done on appeal. Alliance argues that no attorney fees should be awarded for defending this appeal.

An award for attorney fees for work done on appeal is warranted when the appeal has necessitated additional work on the attorney's part. *Hickman v. Allstate Timber Co.*, 94-1275 (La.App. 3 Cir. 4/5/95), 653 So.2d 154, *writ denied*, 95-1133 (La. 6/23/95), 656 So.2d 1017; *Aguillard v. Indus. Constr. Co.,* 542 So.2d 774 (La.App. 3 Cir. 1989).

We have reviewed claimant's brief done in connection with this appeal, and we award $3,000.00 in attorney fees.

## CLAIMANT'S ASSIGNMENTS OF ERROR

The claimant answered the employer's appeal asserting one assignment of error. The claimant argues that fringe benefits must be taken into account when calculating an employee's average weekly wage and asks that the case be remanded to determine

10

the value of the employer's contribution to the 401K plan.

In its oral ruling, the WCJ noted as follows:

> The record was held open for the submission of the value of fringe benefits which the Court received on April 17[th] of 2003. It stated that Ms. Lacaze was enrolled in a 401K plan from June the 1[st] of 2000 to August the 17th of 2000 and that for every dollar she invested in the 401K plan she would have received a twenty-five percent match by Alliance. That Alliance had no information as to how much she had invested but when she was terminated she had only - was only invested by twenty percent and that the 401K had no value to her. I have no records to make a proper calculation as to what value fringe benefits would be associated with the 401K plan.

Pursuant to a subpoena duces tecum issued by claimant's counsel, claimant requested that Alliance produce as follows:

> 11)    Any and all documentation pertaining to fringe benefits paid by you to or on behalf of claimant, to include, among all others, group insurance (medical, disability, life, etc.), vehicle, contributions to retirement/pension plan, travel/mileage reimbursement, any and all bonuses ever paid to plaintiff during the time of employment, etc., as well as documentation of the <u>actual cost to you on a monthly basis</u> for each such fringe benefit.

This court has noted on several occasions that fringe benefits generally should be factored into an injured worker's wages. *See Batiste v. Capitol Home Health*, 96-799 (La.App. 3 Cir. 5/7/97), 699 So.2d 395; *Cook v. Dewey Rusk Flooring*, 93-1643 (La.App. 3 Cir. 8/10/94), 642 So.2d 234, *writ denied*, 94-2804 (La. 1/13/95), 648 So.2d 1343.

As stated by *Daigle*, 545 So.2d 1007-08 (La.1989):

> In determining the amount of pre-injury wages an employee earned, "[a]ny money paid the employee which can be regarded as remuneration or reward for his services should be included in fixing his compensation, irrespective of whether or not the payment was in the form of wages." Malone and Johnson, 14 *Louisiana Civil Law Treatise, Workers' Compensation* § 324 at 93 (1980)."

*See also Hodges v. Sentry Ins. Co.*, 492 So.2d 193 (La.App. 3 Cir. 1986); *Vaughan v. Ins. Co. of N. Am.*, 482 So.2d 1014 (La.App. 3 Cir. 1986).

We note, however, that in *Batiste*, the court found that the claimant was entitled to include fringe benefits in the calculation of her wages because she provided proof to the court of the amount of fringe benefits that she earned.  In the instant case, there was no evidence before the court upon which it could rely to make that determination.  We, therefore, find no error in the court's ruling on this issue.

## DECREE

The judgment of the trial court is affirmed in all aspects.  We award $3,000.00 in attorney fees for work done on appeal.  The cost of this appeal is assessed to Alliance Compressors.

**AFFIRMED AND RENDERED.**