# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 10-1433


**DWAYNE OLIVIER**

**VERSUS**

**CITY OF EUNICE**

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
OFFICE OF WORKERS COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO. 07-03982
HONORABLE JASON OURSO, WORKERS' COMPENSATION JUDGE
**\*\*\*\*\*\*\*\*\*\***


## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters, Marc T. Amy, J. David Painter and James T. Genovese, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.**

**Amy, J., dissents and assigns reasons.**

Kevin L. Camel
Cox Cox Filo Camel & Wilson
723 Broad Street
Lake Charles, LA 70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLANT:
      Dwayne Olivier

D. Heath Trahan
Randall B. Keiser
Keiser Law Firm, P.L.C.
P.O. Box 12358
Alexandria, LA  71315-2358
(318) 443-6168
COUNSEL FOR DEFENDANT/APPELLEE:
      City of Eunice

**COOKS, Judge.**

Dwayne Olivier injured his back on October 16, 2006, while in the course and scope of his employment as a firefighter for the City of Eunice (the City). He was treated for his back injury by Dr. Fraser Landreneau, an orthopedist. Mr. Olivier suffered from herniated disks at the L4-5 and L5-S1 levels. In May of 2007, Dr. Landreneau recommended lumbar surgery, but Mr. Olivier was unable to undergo the surgery due to aortic valve stenosis, a serious heart condition. In Dr. Landreneau's opinion, Mr. Olivier was disabled from performing any gainful employment.

On October 17, 2007, Mr. Olivier's sick leave expired, and he began receiving temporary total disability (TTD) benefits at the maximum compensation rate. On that same date, the City terminated Mr. Olivier's employment. Mr. Olivier then applied for and later began to receive disability retirement benefits from the Firefighter's Retirement System, effective the date of his termination.

The City was insured for workers' compensation claims through the Louisiana Municipal Risk Agency, whose claim administrator is Risk Management, Inc. (hereafter RMI). In September of 2007, RMI hired Strategic Case Management to perform a vocational assessment of Mr. Olivier. Tiffany Harrington, the vocational counselor, found in her initial report that Mr. Olivier was permanently restricted to light duty due to his back injury. She also noted his heart condition, for which he was under treatment. Ms. Harrington determined that the City did not have any alternative employment for Mr. Olivier. At that point, she conducted a labor market survey. Eventually, Mr. Olivier's file was closed in April of 2008, without having located a position fitting his work restrictions.

Because Mr. Olivier's heart condition made it too risky to perform the recommended back surgery, Dr. Landreneau released Mr. Olivier from his care in

August 2007. He was referred to Dr. Reginald Ardoin, a pain management specialist, for treatment of his chronic pain.

In January of 2009, RMI again began vocational services on Mr. Olivier. Ms. Harrington met with Mr. Olivier and was instructed he was no longer seeing Dr. Landreneau, but was scheduled to see Dr. Ardoin. In her letter to Mr. Olivier, Ms. Harrington notes that Dr. Landreneau had previously approved some jobs with a light duty restriction. Although he was no longer treating Mr. Olivier, Ms. Harrington sent job leads to Dr. Landreneau seeking his approval. Even though RMI during this time approved and paid for Mr. Olivier's treatment with Dr. Ardoin, Ms. Harrington never contacted Dr. Ardoin for his approval of any potential jobs. Nor did Ms. Harrington contact Dr. Jon Leleux, who was treating Mr. Olivier for his heart condition, to ascertain if that infirmity would affect his ability to return to work. Ms. Harrington eventually presented Mr. Olivier with a list of "available" positions.

Mr. Olivier applied for all the potential jobs listed and was told by several employers he was not qualified and/or the job was not actually available. Mr. Olivier did not receive any interviews or job offers.

On September 3, 2009, RMI terminated Mr. Olivier's TTD benefits and began paying him supplemental earnings benefits (SEB) at $279.62 per week. The amount of the SEB was determined by averaging the jobs on the list provided by Ms. Harrington in March of 2009. This was done despite the fact that a number of jobs on the list were not available.

On May 22, 2007, Mr. Olivier filed a disputed claim for compensation with the Office of Workers' Compensation. He sought indemnity payments based on the City's reduction of his pay during the fifty-two week sick-leave period following the accident. Mr. Olivier also sought penalties and attorney fees due to RMI's failure to

reimburse mileage expenses on several occasions.

On November 15, 2007, the City filed an answer in which it sought an offset pursuant to La.R.S. 23:1225. On October 16, 2008, the City amended its answer to specifically state that it was seeking an offset based on Mr. Olivier's receipt of disability retirement benefits.

The parties then filed cross-motions for partial summary judgment with respect to Mr. Olivier's claim for SEB during the first year following the accident due to the City's reduction of his sick leave pay. The Workers' Compensation Judge (WCJ) denied the City's motion and granted Mr. Olivier's motion, awarding SEB for the period January 2007 through October 2007.

On September 17, 2009, Mr. Olivier amended his disputed claim for compensation to include a claim for TTD benefits stemming from the reduction of benefits to SEB on September 3, 2009. Mr. Olivier also sought penalties and attorney fees for the allegedly improper reduction in benefits.

Trial on the merits was held on August 16, 2010. The issues were the reduction in benefits from TTD to SEB, the alleged failure to timely reimburse medical mileage claims, and the City's request for an offset pursuant to La.R.S. 23:1225. The WCJ rendered judgment finding the reduction to SEB was proper, but the rate was incorrect. Penalties in the amount of $2,000.00 and reasonable attorney fees in the amount of $5,000.00 were awarded. The WCJ denied the request for penalties and attorney fees for alleged late payment of mileage expenses, finding Mr. Olivier was unable to prove his entitlement to same. The judgment also provided that "La.R.S. 23:1225, rather than La.R.S. 11:2258(D), shall govern the amount of any offset due to the defendants after the new SEB rate is used in the calculation." Mr. Olivier has appealed the WCJ's judgment, asserting the following assignments of error:

1. The WCJ failed to use the correct average weekly wage.

2. The WCJ erred in finding the City of Eunice met its burden of proving suitable jobs were available within Mr. Olivier's physical capabilities. The City failed to obtain any release to return to work from claimant's treating physicians, and failed to present any evidence to establish Mr. Olivier's disability status as of September 3, 2009.

3. The WCJ erred in holding the City of Eunice was entitled to an offset under La.R.S. 23:1225 due to Mr. Olivier's receipt of disability retirement benefits from the Firefighter's Retirement System.

4. The WCJ awarded inadequate attorney fees for work performed by claimant's counsel.

## I.    *Average Weekly Wage.*

We find no error in the WCJ's calculation of average weekly wage. Apparently, Mr. Olivier contends the trial court should have used an annual salary of $38,900.00, rather than $38,580.00. The transcript indicates the parties stipulated that $38,580.00 was Mr. Olivier's correct annual salary, which was what the WCJ used in his calculation. When the $3,600.00 in supplemental pay is added, it results in an actual salary upon which benefits are based of $42,180.00.

## II.    *Reduction from TTD to SEB.*

A workers compensation claimant seeking temporary or permanent total disability benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment because of his physical condition. *Greis v. Lake Charles Mem'l Hosp.*, 97-1258 (La.App. 3 Cir. 3/6/98), 709 So.2d 986, *writs denied*, 98-937, 98-939 (La. 5/15/98), 719 So.2d 467.

Supplemental earnings benefits are awarded when a work-related injury prevents the claimant from earning ninety percent of his pre-injury wages. La.R.S. 23:1221(3). "The amount of SEB is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly

-4-

earning capacity." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 9 (La.7/1/97), 696 So.2d 551, 556; La.R.S. 23:1221(3)(a). As noted by our supreme court in *Banks*, 696 So.2d at 556 (quoting *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La.1993)), "[t]he purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident."

Once the claimant has met this initial burden of proving entitlement to SEB, the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn. The employer bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee's or the employer's community or reasonable geographic region. *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005 (La.1989). In *Banks*, 696 So.2d at 557, the supreme court held an employer may discharge its burden of proving job availability by establishing, at a minimum, the following:

> (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;

> (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and

> (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

The *Banks* court further held that a "suitable job" was a position that claimant was not only physically capable of performing, but one that also fell within the limits of claimant's age, experience, and education, unless the employer or potential employer was willing to provide any additional necessary training or education. *Id.*; *see also Lacaze v. Alliance Compressors*, 03-1566 (La.App. 3 Cir. 4/14/04), 870 So.2d 1150; *City of Eunice v. Carrier*, 02-1132 (La.App. 3 Cir. 02/19/03), 844 So.2d

900, *writ denied*, 03-813 (La. 5/09/03), 843 So.2d 409. The courts have clearly provided that this analysis is "necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker[s'] compensation law is to be liberally construed in favor of finding coverage." *Daigle*, 545 So.2d at 1007; *see also Banks*, 696 So.2d at 556, and *Manpower Temp. Servs. v. Lemoine*, 99-636 (La.App. 3 Cir. 10/20/99), 747 So.2d 153, 157.

We find the record in the present case reveals Mr. Olivier was not provided with appropriate vocational services. It is clear that Ms. Harrington failed to contact Dr. Ardoin. RMI was paying Dr. Ardoin to treat claimant during the time the job list was compiled. Ms. Harrington also did not contact Dr. Leleux to assess how Mr. Olivier's heart condition would affect his ability to return to work. In a February 10, 2009 letter to claimant, Ms. Harrington notes that Dr. Landreneau had approved some jobs based on light duty restrictions, but the approval to which she refers was provided some eighteen months earlier. Despite the fact that he was no longer Mr. Olivier's treating physician, in March of 2009, Ms. Harrington sent job leads to Dr. Landreneau for his approval. In *Montgomery v. Lafayette Parish School Board*, 09-643, p. 8 (La.App. 3 Cir. 12/9/09), 31 So.3d 1071, 1075, *writ denied*, 10-1069 (La. 9/3/10), 44 So.3d 686, we specifically noted that "[i]mplicit in the 'availability' requirement of *Banks* is physician approval. *See East-Garrett v. Greyhound Bus Lines*, 99-421 (La.App. 3 Cir. 11/3/99), 746 So.2d 715." In this case, the record is clear that neither of Mr. Olivier's treating physicians, Dr. Ardoin and Dr. Leleux, were contacted to approve the jobs provided by Ms. Harrington. Thus, Ms. Harrington failed to get physician approval as required by *Banks* and its progeny.

Further, the record reveals that the list of jobs provided to Mr. Olivier were not actually available when he received the list. When Mr. Olivier applied for the

dispatcher position on the list, he was told that he was not qualified and that the job was not available. Two other employers told him he was physically incapable of performing the job. Another allegedly "available" position was not actually open, but the employer would only keep applications on file. The record revealed that despite applying for these allegedly "available" jobs, Mr. Olivier received neither a job offer nor even an interview.

A review of the record clearly establishes the City failed to carry its burden of proving Mr. Olivier was physically able to perform a certain job and that the job was offered and available to him. The WCJ committed clear error in finding the jobs provided to Mr. Olivier were "suitable" or "available" under the *Banks* standard. Accordingly, the City improperly reduced Mr. Olivier from TTD benefits to SEB. Therefore, we reverse this portion of the judgment and award TTD benefits to Mr. Olivier at the maximum compensation rate based on an annual salary of $42,180.00.

### III.   *Offset.*

The WCJ found that the City was entitled to offset Mr. Olivier's indemnity benefits due to his receipt of disability retirement benefits from the Firefighters' Retirement System (FRS). However, the WCJ did not specify the amount of the offset, indicating in the judgment that the parties were to request a hearing if they could not agree on the amount of the offset due. The parties also disagree as to whether any offset due is pursuant to La.R.S. 23:1225 or another offset provision, La.R.S. 11:2258(D).

### A.   **Which Offset Statute is Applicable.**

Louisiana Revised Statutes 23:1225(C)(1) provides for an offset of workers' compensation benefits when other specified benefits are also being received by the employee. The statute provides for an offset as follows:

If an employee receives remuneration from:

(a) Benefits under the Louisiana Workers' Compensation Law.

    . . . .

(c) Benefits under disability benefit plans in the proportion funded by an employer.

(d) Any other workers' compensation benefits,

then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the workers' compensation benefit, so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage.

It is well established in our jurisprudence that La.R.S. 23:1225(C)(1) is a restriction on an injured employee's right to workers' compensation benefits and must be strictly construed. *Jones v. Gen. Motors Corp.*, 03-1766 (La. 4/30/04), 871 So.2d 1109 (citing *Cousins v. City of New Orleans*, 608 So.2d 978 (La.1992)); *see also Mouton v. Walgreen Co.*, 07-1403 (La.App. 3 Cir. 4/2/08), 981 So.2d 75. "An employer seeking credit for benefits covered by the statute has the burden of proving both entitlement to and the *amount of the credit*." *Id*. at 88 (emphasis added).

Mr. Olivier argues that La.R.S. 11:2258(D) applies instead of La.R.S. 23:1225(C). Louisiana Revised Statutes 11:2258(D) provides as follows:

> Notwithstanding the provisions of R.S. 23:1225, when any member becomes disabled and is entitled to a disability benefit from the retirement system, the disability benefit payable for any month that the member is also receiving worker's compensation benefits shall be reduced, if necessary, so that the total of both benefits shall not exceed the member's average final compensation. The benefit to be paid shall be computed such that the disability benefit from the retirement system and the worker's compensation benefit shall each be paid in respect to the ratio that each individual benefit bears to the total of both benefits, to which the member would be entitled prior to reduction, multiplied by the average final compensation of the member.

In response, the City argues La.R.S. 23:1225(C) is not trumped by the

provisions of La.R.S. 11:2258(D). However, the language of La.R.S. 11:2258(D) plainly provides "[n]otwithstanding the provisions of R.S. 23:1225." Further, as Mr. Olivier notes, La.R.S. 11:2258(D) specifically addresses benefits provided under the FRS, as opposed to La.R.S. 23:1225, which is a general provision applying to disability benefit plans of all types. It is well understood in the area of statutory construction that the more specific statute will control over the more general one. *Dupont v. State, Dep't. of Transp. and Dev.*, 01-188 (La.App. 3 Cir. 10/3/01), 797 So.2d 776. Therefore, we find any offset the City is entitled to is pursuant to La.R.S. 11:2285(D).

### B. Amount of Offset Due.

Initially, Mr. Olivier argued that the City failed to introduce any evidence to calculate the offset which the City asserts it is owed, and this failure is fatal to its request. However, at oral argument, counsel for Mr. Olivier acknowledged the record contained the necessary information to calculate the offset due. Both parties were allowed to file supplemental briefs on the issue of the calculation of the amount of offset due.

To determine the amount of an offset under La.R.S. 11:2285(D), the following figures are necessary: (1) the average final compensation, (2) the amount of the maximum FRS benefit, and (3) the amount of workers' compensation benefits. The parties agree Mr. Olivier's average final compensation is $3,169.69 per month. The second figure is the maximum FRS benefit, which is sixty (60) percent of the average final compensation, or $1,901.81. This is the maximum amount of retirement benefit to which Mr. Olivier is entitled, before any reduction for the receipt of workers' compensation benefits.

The final figure is the monthly amount of workers' compensation benefits. Mr.

Olivier is entitled to $454.00 per week in workers' compensation benefits, or $1,967.33 per month ($454.00 multiplied by fifty-two (52) weeks, divided by twelve (12) months).[1]  Thus, the combined benefit, reached by adding the FRS benefits ($1,901.81) and the workers' compensation benefit ($1,967.33), is $3,869.14.  We next determine the percentages that the FRS benefits and the workers' compensation benefits are to the combined benefits.  The FRS benefits amount ($1,901.81) is 49.15 percent of the combined benefits, and the workers' compensation benefits amount ($1,967.33) is 50.85 percent of the combined benefits.  The workers' compensation benefits percentage (50.85%) is then multiplied against the average final compensation ($3,169.69) to get the reduced workers' compensation benefit amount of $1,611.79 per month.  Thus, pursuant to La.R.S. 22:1185(D), the City would be entitled to an offset of $355.54 per month based on Mr. Olivier's entitlement to $1,967.33 per month in workers' compensation benefits.

### IV.    *Inadequate Attorney Fees.*

Lastly, it is contended the award of $5,000.00 in attorney fees was inadequate to reflect the amount of work performed by Mr. Olivier's counsel.  We find the WCJ did not abuse its vast discretion in its award of attorney fees.

### V.    *Additional Attorney Fees for Work on Appeal.*

Finally, we address Mr. Olivier's request for additional attorney fees for work necessitated by this appeal.  "Because attorney fees were correctly awarded below, failing to award increased attorney fees for the additional work required for this appeal would be inconsistent with that judgment."  *Frank v. Kent Guidry Farms*,

---

[1]  In its brief, the City references a figure of $1,816.01 as the amount of monthly workers' compensation benefits.  This figure appeared in the FRS records, but appears to be incorrect.  Counsel for Mr. Olivier opines this figure is apparently based on the reduced amount of workers' compensation benefits Mr. Olivier was receiving at the time that calculation is done.  In any event, we agree with counsel for Mr. Olivier that the correct amount of monthly workers' compensation benefits is $1,967.33.

01-727, p. 5 (La.App. 3 Cir. 5/8/02), 816 So.2d 969, 973, *writ denied*, 02-1608 (La. 6/27/03), 847 So.2d 1273.   Given the amount of work counsel for Mr. Olivier performed on appeal, we grant an additional $5,000.00 in attorney fees.

## DECREE

For the foregoing reasons, we reverse the portion of the WCJ's judgment improperly reducing Mr. Olivier from TTD benefits to SEB, and award Mr. Olivier TTD benefits at the maximum compensation rate based on an annual salary of $42,180.00.  The portion of the judgment granting the City an offset pursuant to La.R.S. 23:1225(C) is reversed.  The judgment is amended to award the City an offset pursuant to La.R.S. 22:1185(D) of $355.54 per month.  The judgment is also amended to award Mr. Olivier an additional $5,000.00 in attorney fees for the work performed on appeal.  In all other aspects the judgment is affirmed.

**AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.**

NUMBER 10-1433

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DWAYNE OLIVIER

VERSUS

CITY OF EUNICE

AMY, J., dissents and assigns reasons.

I respectfully dissent from the majority opinion.

Significantly, I differ from the majority insofar as I would affirm the award of supplemental earnings benefits. I find the claimant's argument as to the propriety of temporary total disability benefits does not accurately reflect the necessary burden of proof. Instead, La.R.S. 23:1221(1)(c) dictates that the claimant prove by clear and convincing evidence that he or she:

> *is physically unable to engage in any employment* or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

(Emphasis added.) Rather than being physically unable to engage in any employment, the claimant has been released to return to light duty. Although the claimant has a notable heart condition, he failed to establish what impact this has on his ability to work. Instead, on the issue of the ability to work, the record only includes the claimant's return to light duty status. While I differ from the majority on the award of TTD benefits rather than SEBs, I agree that the employer failed to adequately establish the availability of jobs suitable to the claimant as needed for reduction of the amount due under La.R.S. 23:1221(3)(c)(i). Accordingly, I would affirm the award of SEBs, but I would amend the judgment to award the indemnity benefit at the full rate.

I also differ from the majority's determination regarding the offset issue. In my opinion, La.R.S. 23:1225 is applicable to the establishment of the compensation rate offset, whereas La.R.S. 11:2258 dictates how disability retirement benefits are to be paid by the Firefighters' Retirement System. Accordingly, I would affirm the workers' compensation judge's ruling in this respect. Further, I would not calculate the amount of any offset due insofar as the workers' compensation judge specifically refrained from doing so in anticipation of the parties' joint calculation of the applicable figure. I would remand this issue for the workers' compensation judge's consideration.

Finally, and while I would affirm the amount of the attorney fees awarded below, I dissent from the majority's determination to award additional attorney fees for work performed on appeal insofar as the claimant is the appellant. The supreme court has stated that "[a] workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in *defending* the employer's unsuccessful appeal." *Frith v. Riverwood, Inc.*, 04-1086, p. 12 (La. 1/19/05), 892 So.2d 7, 15 (emphasis added). Thus, an award of attorney fees on appeal is appropriate where "the defendant appeals, obtains no relief, and the appeal necessitates additional work by the claimant's counsel." *Ware v. Mitchell*, 05-1289, p. 4 (La.App. 3 Cir. 4/12/06), 928 So.2d 699, 702. *See also Johnson v. Conagra Poultry Co.*, 09-646 (La.App. 3 Cir. 12/9/09), 26 So.3d 982, *writ denied*, 10-350 (La. 4/16/10), 31 So.3d 1067. In this case, the claimant is the appellant and is therefore not defending the employer's appeal. Accordingly, I respectfully dissent from the majority's award of attorney fees for work performed on appeal.

In sum, I would amend the judgment with regard to the rate of SEBs. In all other respects, I would affirm.