# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-465


DONOVAN MECHE

VERSUS

GRAY INSURANCE COMPANY, ET AL.



**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 04
PARISH OF LAFAYETTE, NO. 13-07592
ANTHONY PAUL PALERMO, WORKERS' COMPENSATION JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


## AFFIRMED IN PART AND REVERSED IN PART.


William H. Parker, III
Allen and Gooch
A Law Corporation
P. O. Box 81129
Lafayette, LA 70598-1129
(337) 291-1270
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Supreme Services and Specialty Co., Inc.
    The Gray Insurance Company

**Mark L. Riley**
**The Glenn Armentor Law Corporation**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Donovan Meche**

**GREMILLION, Judge.**

In this workers' compensation matter, Supreme Service & Specialty Co., Inc., and its workers' compensation insurer, the Gray Insurance Company (Supreme), appeal awards of compensation benefits to Supreme's employee, Mr. Donovan Meche. Mr. Meche has answered the appeal and has prayed for additional attorney fees in defending the appeal. For the reasons that follow, we affirm and render.

## FACTS AND PROCEDURAL HISTORY

Mr. Meche was employed by Supreme as a hydro pressure tester, whose job it was to test the integrity of valves. This required placing the valves onto an apparatus that subjected them to water pressure. On November 3, 2012, Meche was testing a group of two-by-two plug valves when, he claims, he swung a sledge hammer and felt popping in his mid- and lower back. No one witnessed this event.

Following the incident, Mr. Meche was seen by Dr. Steven Guillory a general practitioner in Broussard, who provided conservative treatment. An MRI of Mr. Meche's back was read as demonstrating no abnormality. Dr. Guillory then referred Mr. Meche to Dr. Barry Henry, an orthopedic surgeon, who recommended that he not work and undergo physical therapy. Mr. Meche then sought treatment from Dr. Michel Heard, a Lafayette orthopedic surgeon. Dr. Heard also prescribed medication and physical therapy. He also recommended that an MRI of Mr. Meche's thoracic spine be performed, but that request was denied by Supreme's workers' compensation insurer. Dr. Heard placed exact physical limitations on Mr. Meche's activities, limiting him to ten pounds lifting and sitting and standing no more than twenty minutes. In addition to his back pain, Mr. Meche complained of erectile dysfunction, which Dr. Heard opined was related to his on-the-job accident.

Dr. Heard prescribed Cialis, but Supreme's insurer denied his request that it pay for that.

In March 2013, Supreme obtained an independent medical examination (IME) of Mr. Meche by Dr. Thomas R. Butaud, an Opelousas orthopedic surgeon. Dr. Butaud opined that Mr. Meche was not able to return to his former job, which required lifting fifty-pound valves, but could perform "sedentary or light duty." As a result of Dr. Butaud's IME, Supreme offered Mr. Meche light-duty work. Supreme terminated Mr. Meche's compensation benefits on April 28, 2013. On April 29, 2013, Mr. Meche reported for his first day of work. Over the course of that and the following two days, Mr. Meche worked a total of just short of six hours. Each day, he left complaining of pain.

After the third day of work, Mr. Meche returned to Dr. Heard, who reiterated his restrictions on Mr. Meche's physical activities. Mr. Meche did not tell Dr. Heard of his attempt to return to work. No compensation benefits were paid by Supreme after they were terminated in April 2013.

In April 2014, Dr. Heard arranged for Mr. Meche to undergo an EMG and nerve conduction study performed by Dr. James Domingue, a Lafayette neurologist. This study was interpreted as demonstrating normal findings.

Although he did not return to work for Supreme, Mr. Meche was not entirely sedentary thereafter. He admitted to performing heavy manual labor beginning on July 28 through early August 2014 for a Mr. Chaisson, a neighbor who was erecting an awning at his house. He also assisted a flooring contractor, Tim Welch, in September 2014. Between these two jobs, Mr. Meche earned a total of $470.00. Mr. Meche never informed Dr. Heard of having performed this work.

Mr. Meche initiated a disputed claim for compensation and asked that he be awarded supplemental earnings benefits (SEBs) and attorney fees. After trial, the workers' compensation judge (WCJ) found Mr. Meche's account of the accident was credible. The WCJ awarded SEBs of $583.33 per week, from April 28, 2013 through July 28, 2014. Supreme was ordered to pay SEBs from July 28, 2014 subject to credit for wages actually earned, as the WCJ found that Mr. Meche's testimony regarding his capabilities was not credible. Supreme was also ordered to pay unpaid medical bills and to begin paying for Mr. Meche's Cialis prescription. From this judgment, Supreme lodged this appeal, asserting the following assignments of error:

I. The Workers' Compensation Judge committed error, either manifest or legal, in holding that the claimant satisfied his burden of establishing a compensable accident;

II. The Workers' Compensation Judge committed error, either manifest or legal, in holding that the claimant was entitled to Supplemental Earnings Benefits subsequent to his return to light-duty work in April 2013;

III. The Worker's [sic] Compensation Judge committed error, either manifest or legal, in holding that the claimant was entitled to indemnity benefits of any kind subsequent to July 2014, when the claimant admitted to, and demonstrated the ability to, being able to perform heavy manual labor;

IV. The Worker's [sic] Compensation Judge committed error, either manifest or legal, in holding that the claimant was entitled to medical treatment in the form of a Cialis prescription, in light of the fact that the plaintiff had no urology consultation and no radiology supporting a neurogenic component to his alleged injury.

## ANALYSIS

The manifest error standard of review applies to the findings of the WCJ in workers' compensation cases. *Dean v. Southmark Constr.*, 03-1051 (La. 7/6/04), 879 So.3d 112. The court must review the record in its entirety and determine

whether the record reasonably supports the WCJ's conclusions. *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). Reasonable evaluations of credibility are afforded great weight, and when the evidence is disputed, a fact-finder's conclusions "can virtually never be manifestly erroneous." *Purvis v. Grant Parish Sch. Bd.*, 13-1424, p. 6 (La. 2/14/14), 144 So.3d 922, 926.

The WCJ found Mr. Meche's account of the incident credible based upon "the testimony, demeanor, voice inflection, mannerisms, facial expressions, and gestures of the claimant." The WCJ also found that Mr. Meche's testimony was corroborated by the medical evidence, particularly the records of Drs. Heard and Henry. We also note that Mr. Meche immediately reported the incident to his supervisor, Mr. Chris Hebert. Though he attempted to work through his pain that day, Mr. Meche was unable to and was taken to Dr. Guillory that day.

Of the employee's burden of proof regarding an unwitnessed accident, the Louisiana Supreme Court has stated:

> Despite the liberal construction of the statute afforded the worker in a compensation action, the worker's burden of proof is not relaxed. Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.
>
> In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Indeed, the

manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court's decision is based solely upon written reports, records or depositions.

*Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 361 (La.1992)(citations omitted).

We find no other evidence that discredits the account of the incident provided by Mr. Meche. The circumstances surrounding the incident and medical evidence corroborate the account. Supreme argues that because Mr. Meche exaggerated his complaints to Dr. Heard, failed to report to Dr. Heard that he was able to work, and engaged in some employment while being treated, this court should discount the entirety of his testimony.

The general principal governing workers' compensation is stated in La.R.S. 23:1031(A):

> If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course and scope of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.

Louisiana Revised Statutes 23:1221 defines what benefits are owed. Compensation benefits are paid according to the nature of the employee's injuries and the degree to which he is disabled. Those disabled to the degree that they are unable to engage in any employment or self-employment are entitled to either temporary total disability benefits (La.R.S. 23:1221(1)) or permanent total disability benefits (La.R.S. 23:1221(2)). An employee whose injury results in his inability to earn wages equal to ninety percent or more of his wages at the time of injury is entitled to SEBs under La.R.S. 23:1221(3).

> Supplemental earnings benefits are awarded when a work-related injury prevents the claimant from earning ninety percent of his pre-injury wages. La.R.S. 23:1221(3). "The amount of SEB is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning

capacity." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.,* 96–2840, p. 9 (La.7/1/97), 696 So.2d 551, 556; La.R.S. 23:1221(3)(a). As noted by our supreme court in *Banks,* 696 So.2d at 556 (quoting *Pinkins v. Cardinal Wholesale Supply, Inc.,* 619 So.2d 52, 55 (La.1993)), "[t]he purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident."

Once the claimant has met this initial burden of proving entitlement to SEB, the burden of proof shifts to the employer if it wishes to prove the employee is earning less than he or she is able to earn. The employer bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employee's or the employer's community or reasonable geographic region. *Daigle v. Sherwin–Williams Co.,* 545 So.2d 1005 (La.1989). In *Banks,* 696 So.2d at 557, the supreme court held an employer may discharge its burden of proving job availability by establishing, at a minimum, the following:

> (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
>
> (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
>
> (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

The *Banks* court further held that a "suitable job" was a position that claimant was not only physically capable of performing, but one that also fell within the limits of claimant's age, experience, and education, unless the employer or potential employer was willing to provide any additional necessary training or education. *Id.; see also Lacaze v. Alliance Compressors,* 03–1566 (La.App. 3 Cir. 4/14/04), 870 So.2d 1150; *City of Eunice v. Carrier,* 02–1132 (La.App. 3 Cir. 02/19/03), 844 So.2d 900, *writ denied,* 03–813 (La.5/09/03), 843 So.2d 409. The courts have clearly provided that this analysis is "necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker[s'] compensation law is to be liberally construed in favor of finding coverage." *Daigle,* 545 So.2d at 1007; *see also Banks,* 696 So.2d at 556, and *Manpower Temp. Servs. v. Lemoine,* 99–636 (La.App. 3 Cir. 10/20/99), 747 So.2d 153, 157.

*Olivier v. City of Eunice*, 10-1433, pp. 5-6 (La.App. 3 Cir. 6/8/11), 66 So.3d 1244, 1248-49.

Mr. Meche was offered employment with Supreme. The amount of wages was established at trial. Therefore, Supreme proved the second and third elements of its burden of proof under *Banks*. The issue here is whether the job was "suitable." He argues that the job was not suitable because no doctor had approved the position. In support of this proposition, he cites *Montgomery v. Lafayette Parish School Bd.*, 09-643 (La.App. 3 Cir. 12/9/09), 31 So.3d 1071, *writ denied*, 10-1069 (La. 9/3/10), 44 So.3d 686, in which a panel of this court held that "[i]mplicit in the 'availability' requirement of *Banks* is physician approval." *Id.* at 1075.

We also note that throughout the period preceding and following this position at Supreme, Dr. Heard had consistently opined that Mr. Meche was limited to lifting nothing greater than ten pounds and to standing or sitting no longer than twenty minutes. The job analysis performed by VocStat Rehabilitation, LLC, the vocational rehabilitation counselors assigned to Mr. Meche's case, demonstrated that the job would require that during an eight-hour work day, Mr. Meche would stand intermittently for one hour, sit intermittently for six hours, and walk intermittently for one hour. If Mr. Meche were to sit for no more than twenty minutes and stand for no more than twenty minutes, he obviously could not be required to sit for six hours in any given day. While this might satisfy the definition of light duty as set forth in Dr. Butaud's opinion, it certainly does not satisfy Dr. Heard's limitations on Mr. Meche. Given such evidence, we find the WCJ did not manifestly err in his conclusion that Mr. Meche is entitled to SEBs during the period from April 28, 2013 through July 28, 2014.

The WCJ found specifically that Mr. Meche's testimony regarding his capabilities after July 28, 2014 was not credible. Whether Mr. Meche continued to be disabled after that date is also a matter he bore the burden of proving at trial. There is no question that Mr. Meche worked for Mr. Chaisson from July 28 to August 2, 2014. Just six days before that, Mr. Meche presented to Dr. Heard and related his mid-back pain as five on a ten-point scale and his low back pain as seven of ten. He related headaches he rated as ten. A week later, *while still working for Mr. Chaisson*, Mr. Meche again presented to Dr. Heard with increased mid- and low-back pain. He said nothing to Dr. Heard about being actively engaged in work at the time. Mr. Meche was scheduled to have seen Dr. Heard in four weeks, or September 29, 2014, *five days after he began working for Mr. Welch doing flooring work.* Dr. Heard's certified records introduced into evidence contain no narrative report from a September 29 visit. However, the trial was held on October 6, 2014, so perhaps there had been insufficient time for Dr. Heard to update his file. Perhaps Mr. Meche did not attend the appointment. We do not know, and we have to decide the matter on the basis of the record before us.

The objective measures of injury, such as the November 2012 MRI and the EMG and nerve conduction study performed by Dr. Domingue were normal. All Dr. Heard had to go on was the subjective complaints voiced by Mr. Meche. If Mr. Meche's veracity is questionable, it follows that Dr. Heard's opinion must be, too. *See Magee v. Abek, Inc.*, 04-2554 (La.App. 1 Cir. 4/28/06), 934 So.2d 800, 807, *writ denied,* 06-1876 (La. 10/27/06), 939 So.2d 1287. "[I]n many cases, the credibility of the history given by the claimant to his physicians becomes as important as the medical opinions based in part on that history. The rule that questions of credibility are for the trier of fact applies also to the evaluation of

8

expert testimony." *Id.* at 807(citations omitted). A physician can only give an accurate opinion based upon history if that history is accurate. In this case, Mr. Meche hid information from his doctor, so his doctor was hindered in expressing a reliable opinion. In the face of these inaccuracies, the WCJ manifestly erred in finding that Mr. Meche carried his burden of proving he was disabled after July 28, 2014. The award of SEBs for the subsequent period is reversed.

In its final assignment of error, Supreme asserts that the WCJ erred in requiring it to pay for Mr. Meche's Cialis prescription. In support thereof, Supreme cites one of a very small number of cases that address this issue, *Morgan v. Barber Bros. Contracting*, 11-1164 (La.App. 1 Cir. 4/25/12), 92 So.3d 524. In *Morgan*, the employee made a claim for some dental extractions, sleep apnea testing, testosterone replacement therapy, and Cialis, which he claimed were needed because of his years of narcotic pain medications resulting from his compensable injury. The WCJ rejected the employee's demands for all but the dental procedures, noting that his pain management physician had recommended that before these be prescribed, the employee should first be weaned from the narcotic medications through an in-patient treatment program. There is no such standing recommendation from any of Mr. Meche's doctors, and we do not read *Morgan* as imposing any testing requirement on a patient before a prescription can be written. Dr. Heard prescribed Cialis and stated that Mr. Meche's erectile dysfunction is related to the on-the-job accident. No medical evidence disproves that. We cannot conclude that the WCJ's award of this benefit was manifestly erroneous.

Mr. Meche answered the appeal and prayed for additional attorney fees. "Ordinarily, an employee is entitled to additional attorney fees for successfully

defending a workers' compensation judgment on appeal." *Mayes v. Deep South Chem., Inc.*, 11-91, p. 6 (La.App. 3 Cir. 6/1/11), 66 So.3d 65, 70. Mr. Meche was largely successful in defending the judgment on appeal. Thus, we award him an additional $2,000.00 in attorney fees.

## CONCLUSION

Every assignment of error interposed by Supreme is reviewable under the manifest error standard. We cannot conclude that the WCJ erred in finding that an accident occurred or that Mr. Meche is entitled to SEBs before July 28, 2014. We conclude, however, that the WCJ did manifestly err in concluding that he is entitled to SEBs after that date. The record reasonably supports the WCJ's conclusion that Supreme must pay for Mr. Meche's Cialis prescription. Mr. Meche is awarded additional attorney fees of $2,000.00. All costs of this appeal are taxed to defendants/appellants, Supreme Service and Specialty Co., Inc. and the Gray Insurance Company.

**AFFIRMED IN PART AND REVERSED IN PART.**

10